UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARMEN BEEMAN,<br><br>              Plaintiff,<br><br>    v.<br><br>ALEJANDRO N MAYORKAS,<br><br>              Defendant. | CASE NO. C21-235 MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S MOTION TO STAY DISCOVERY |

This matter comes before the Court on Defendant Alejandro Mayorkas' Motion to Dismiss (Dkt. No. 8) and Motion to Stay Discovery (Dkt. No. 14). Having review the Motion, Plaintiff Armen Beeman's Opposition to the Motion to Dismiss (Dkt. No. 10), the Reply (Dkt. No. 12), and all supporting materials in the record, the Court GRANTS in part and DENIES in part the Motion to Dismiss and DENIES the Motion to Stay Discovery as MOOT.

**BACKGROUND**

Beeman was fired from his position as a Border Patrol Agent with the U.S. Customs and Border Protection (CPB) in December 2017. He claims his termination was the result of

discrimination on account of his sexual orientation and that he endured a hostile work environment related to his sexual orientation. He pursues two rather undifferentiated claims of disparate treatment and hostile work environment under Title VII. Defendant seeks dismissal of the claims, arguing that Beeman waived any right to pursue them when he executed a "Last Chance Agreement" in lieu of being terminated for misconduct. Defendant also argues Beeman failed to exhaust his administrative remedies. The Court reviews the relevant factual allegations.

A.    Beeman's Employment

Beeman began work as a Border Patrol Agent in Sumas, Washington in 2009. (See First Am. Compl. ¶ 4.2 (Dkt. No. 3).) Beeman's tenure was not without its difficulties. In July 2014, Beeman was arrested for driving under the influence in Sedro Wooley, and a year later the CPB suspended him for fourteen days as a result of this incident. (Id. ¶¶ 4.9-4.10.) With the aid of his Union representative, Beeman was able to reduce his suspension to three days through an arbitration proceeding in November 2015. (Id. ¶ 4.11.) Beeman was then arrested in April 2016 for obstructing the arrest of his girlfriend who was suspected of driving under the influence. (Id. ¶¶ 4.13-4.22.) Although Beeman was exonerated by a jury in October 2016, the CPB investigated the incident and placed Beeman on administrative leave without pay. (Id. 4.25.) It is unclear when he was placed on leave.

Roughly a year after the April 2016 arrest, Chief Chris Bippley presented Beeman with a "proposed removal letter," which recommended termination in light of certain findings concerning the April 2016 incident and arrest. (FAC ¶¶ 4.5, 4.27-4.29, 4.32-4.33.) The jury's verdict in Beeman's favor notwithstanding, Chief Bippley refused to restore Beeman to duty for six months due to "firearm safety concerns" that appear related to the fact that Beeman was carrying a gun in his girlfriend's car at the time of the incident. (Id. ¶¶ 4.18, 4.23, 4.29-.30)

Ultimately Beeman signed a "Last Chance Agreement" on September 7, 2017 in lieu of termination. (Id. ¶ 4.34.) Through this Last Chance Agreement, Beeman agreed not to commit any "misconduct" for 3 years. But in October 2017, Beeman was accused of misappropriating funds and improperly using his Government credit card to fill up gas cans to be used for pressure washing duties at the station in Sumas. (Id. ¶¶ 4.35-4.44, 4.44-4.48.) On December 19, 2017, Beeman was terminated for gas theft, improper use of a government fuel card, and using a non-border patrol gas can in violation of his Last Chance Agreement. (Id. ¶ 4.49.)

Against this backdrop, Beeman alleges that his termination occurred on account of his identification as bisexual. He alleges that his supervisor and division chief, Anthony Holladay learned that Beeman is bisexual in July 2015. (FAC ¶¶ 4.6-4.8.) Beeman alleges that during the arbitration proceeding in November 2015, he overheard Chief Holladay say "he was 'not going to let some Northern Border Intern (NBI) faggot work here' if he could help it." (Id. ¶ 4.12.) Beeman also alleges that after his 2016 arrest, he believes that non-bisexual employees were not placed on unpaid administrative leave for off-duty misconduct. (Id. ¶ 4.25.)

Beeman also alleges that the reason for his ultimate termination was pretextual for discrimination on account of his bisexuality. Beeman alleges that his superiors instructed him to obtain fuel for the pressure-washer, and that he did so occasionally in the 28 months prior to termination. (FAC ¶¶ 4.36-4.38.) He alleges that he was given a government fuel card and never instructed not to use it to buy gas for the pressure washer and never learned this was inappropriate until accused of misappropriation. (Id. ¶¶ 4.41-4.43, 4.51.) He alleges that other non-bisexual employees who were similarly situated on probation were treated far better than he was despite engaging in worse misconduct. (Id. ¶¶ 4.53-4.64.)

B.      **EEOC Complaint**

After his termination, Beeman initiated contact with the CPB's EEO counselor. He did so roughly 37 days after his termination, on January 26, 2018. (Ex. E to the Declaration of Heather Costanzo (Dkt. No. 9-5).) The email Beeman sent is not appended to the First Amended Complaint, but it is referenced. In this complaint, Beeman noted that he was compelled to undergo drug testing at a rate 400% higher than for other agents during the same period, was targeted for discipline and required to write a memo on unknown vehicle damage, and was required to write up a memo about picking up take-out food while on duty despite the fact that other agents were allowed to do so without writing up memos. (EEOC Complaint (Dkt. No. 9-6 at 9).) Beeman does not identify specific dates of these acts.

On March 9, 2018, Beeman then filed an EEO complaint of Discrimination with the Privacy and Diversity Office of the U.S. Customs and Border Protection. (FAC ¶ 5.1.) The EEOC dismissed the complaint in September 2018. (Id. ¶ 5.2.) In September 2018, the Agency denied the petition, finding it untimely and barred by the Last Chance Agreement. But Beeman successfully appealed the decision to the EEOC Office of Federal Operations, which reversed the decision, finding that Beeman had timely appealed the termination decision through the administrative process. (Ex. 4 to the Beeman Decl. (Dkt. No. 11-4).) That Order states that Beeman was permitted to file a civil action regarding his allegations provided he waited more than 180 days from the date of that decision. Beeman did so, by waiting until February 25, 2021 to file the present lawsuit. (Dkt. No. 1.)

C.      **Last Chance Agreement**

Defendant argues in its Motion to Dismiss that Beeman waived his right to challenge his termination and any claim of discrimination whether or not it arose before or after he signed the

1  Last Chance Agreement. There are three provisions from the Agreement that are relevant to
2  review to assess this argument.
3      First, Beeman agreed that if he was removed for violating the Agreement, he "knowingly
4  and voluntarily agree[d] to waive any and all appeal rights regarding the removal in any forum,
5  including but not limited to any and all grievance or appeal rights . . . . to file a complaint with
6  the Equal Employment Opportunity Commission concerning any act that predates the effective
7  date of this Agreement or to file any other action in any administrative or judicial forum,
8  challenging or appealing the removal." (Agreement ¶ 2(h) (Dkt. No. 9-3 at 3).) Second, Beeman
9  agreed that "[i]n the event [Beeman] is removed for violating this Agreement, there shall be no
10 appeal right in any forum." (Id.) Third, Beeman agreed to "abandon, withdraw, release, and/or
11 waive, with prejudice, any and all formal and informal claims, complaints, appeals, grievances,
12 or other actions initiated or filed or which could be filed in the future against the Agency, or its
13 current or past employees, in any forum, concerning any act that predates the effective date of
14 this Agreement." (Id. ¶ 2(k).)
15                              **ANALYSIS**
16 **A.    Legal Standard**
17      The Court may dismiss a complaint for "failure to state a claim upon which relief can be
18 granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by
19 lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal
20 theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016). In ruling on a Rule
21 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint
22 in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc.,
23 135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter,
24

1  accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556
2  U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

3  **B.    Judicial Notice and Motion to Strike**

4  Both parties have filed materials outside of the Amended Complaint that they ask the
5  Court to review. Defendant also asks the Court to strike the declaration that Beeman filed in
6  opposition to the Motion.

7  On a motion to dismiss, the Court considers the complaint's allegations, documents
8  "incorporated into the complaint by reference, and matters of which a court may take judicial
9  notice." In re Alphabet, Inc. Sec. Litig., 1 F.4th 687, 693-94 (9th Cir. 2021). Incorporation by
10 reference "is a judicially created doctrine that treats certain documents as though they are part of
11 the complaint itself," the purpose of which is to prevent plaintiffs "from selecting only portions
12 of documents that support their claims, while omitting portions of those very documents that
13 weaken—or doom—their claims." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002
14 (9th Cir. 2018). "However, if the document merely creates a defense to the well-pled allegations
15 in the complaint, then that document did not necessarily form the basis of the complaint." Id.
16 "Otherwise, defendants could use the doctrine to insert their own version of events into the
17 complaint to defeat otherwise cognizable claims." Id.

18 Under Federal Rule of Evidence 201, the Court may take judicial notice of "matters of
19 public record." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), overruled on other
20 grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125–26 (9th Cir. 2002)). The
21 Court may also take notice of facts not subject to reasonable dispute because they (1) are
22 generally known within the court's territorial jurisdiction, or (2) can be accurately and readily
23 determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).
24

1  For example, the Court may take judicial notice of a plaintiff's court filings, proceedings, and
2  public documents. Cunningham v. Litton Indus., 413 F.2d 887, 889 n.2 (9th Cir. 1969) (taking
3  judicial notice of EEOC proceedings).

4  Defendant relies on a variety of materials in support of the Motion to Dismiss that are not
5  found in the Amended Complaint: (1) an April 25, 2017 letter that Matthew J. Hudak, a CBP
6  official, sent to Beeman proposing dismissal (Costanzo Decl. Ex. A (Dkt. No. 9-1)); (2) an
7  August 25, 2017 letter to Beeman from Chief Bippley notifying Beeman he was being removed
8  (Costanzo Decl. Ex. B (Dkt. No. 9-2)); (3) the Last Chance Agreement (Costanzo Decl. Ex. C
9  (Dkt. No. 9-3)); (4) a December 19, 2017 letter to Beeman from Chief Bippley about the
10 termination decision (Costanzo Decl. Ex. D (Dkt. No. 9-4)); (5) Beeman's January 26, 2018
11 email to the CPB's EEO Complaint Filing challenging his December 2017 termination (Costanzo
12 Decl. Ex. E (Dkt. No. 9-5)); (6) Beeman's March 9, 2018 EEOC Complaint (Costanzo Decl. Ex.
13 F (Dkt. No. 9-6)); and (7) a May 8, 2019 letter to Beeman's attorney from Britni Moses, CBP
14 EEO Investigator (Costanzo Decl. Ex. G (Dkt. No. 9-7)).

15 Of these documents, the Court takes notice of Exhibits A, C, and F to the Costanzo
16 Declaration, which are incorporated by reference into the Amended Complaint. While not
17 referenced in the Amended Complaint, the Court also considers Beeman's complaint to the CPB
18 EEO Complaint Filing which both parties rely on in discussing the issue of exhaustion and is
19 subject to judicial notice. (Constanzo Decl. Ex. E.) But the Court does not take notice of Exhibits
20 B, D, and G to the Costanzo Declaration, which are not incorporated by reference or properly
21 subject to judicial notice.

22 Beeman has provided a declaration in support of his opposition which appends four
23 exhibits referred to in his briefing. Beeman appends: (1) a copy of the jury verdict in his favor in
24

his 2016 criminal case (Ex. 1 to Beeman Decl. (Dkt. No. 11-1)); (2) the CBP's September 2018 dismissal of his EEOC Complaint (Beeman Decl. Ex. 2 (Dkt. No. 11-2)); (3) Beeman's appeal of the CBP's dismissal of his EEOC Complaint (Beeman Decl. Ex. 3 (Dkt. No. 11-3)); and (4) the EEOC order overturning the CBP's dismissal of the EEOC complaint. (Beeman Decl. Ex. 4 (Dkt. No. 11-4). The Court considers all four of the exhibits to Beeman's declaration, which are either incorporated by reference or subject to judicial notice. It appears that Defendant does not oppose this consideration. But Defendant does ask the Court to strike Beeman's declaration, which presents facts not contained in the Amended Complaint. The Court agrees that this declaration is improper to consider on a motion to dismiss and STRIKES the substance of the declaration, though not its exhibits.

**C.    Administrative Exhaustion**

Defendant argues that Beeman failed to exhaust his administrative remedies prior to filing this lawsuit. The Court disagrees in part.

A plaintiff must first exhaust his administrative remedies before litigating Title VII claims in federal court. See 42 U.S.C. § 2000e-16(c); Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001). To exhaust administrative remedies, a federal employee must notify an EEO counselor of alleged discriminatory conduct within 45 days of the alleged conduct, and if the matter is unresolved, the employee may submit a formal administrative complaint to the agency. See 29 C.F.R. § 1614.105(a). An employee's failure to contact an EEO counselor within 45 days of the alleged discriminatory event is grounds to dismiss the complaint, or the untimely allegations within the employee's complaint. See 29 C.F.R. §§ 1614.107(a)(2), (b); Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002). And a plaintiff who has filed an EEOC complaint,

can file suit in federal court 180 days after filing an appeal with the EEOC. See 29 C.F.R. § 1614.407(d).

Beeman has exhausted his administrative remedies related to his disparate treatment claim challenging his December 19, 2017 removal. First, he notified the EEO counselor within 45 days of his termination by sending the email complaint on January 28, 2017 (37 days after termination). Second Beeman then filed his lawsuit in February 2021, which is more than 180 days from the April 2019 EEOC Order finding that the CPB had improperly dismissed his EEOC Complaint. Beeman has exhausted his administrative remedies for his disparate treatment claims related to his termination.

Beeman has not, however, exhausted any disparate treatment claims arising out of discrete acts taken before his termination in December 2017. He presents no evidence that he pursued any administrative process until January 28, 2018, after his termination. He does not identify any specific acts other than his termination that might fall within 45-day before he started the EEO process.

Beeman has also failed to exhaust any claim of hostile work environment because he failed to identify or challenge any act that might be part of a hostile work environment that occurred within 45 days from when he filed his EEO complaint with the counselor on January 28, 2018. Beeman's Amended Complaint contains no allegation of a specific act that constitutes part of an ongoing hostile work environment that occurred between December 12, 2017 and January 28, 2018 (45 days before he sought the EEO counselor). The same is true of his January 2018 and March 2019 EEOC complaints. And Beeman's opposition to the Motion to Dismiss speaks generally about the mistreatment he claims occurred before his termination, but he does not identify any specific date or act that would constitute part of an ongoing hostile work

environment within the relevant, exhausted period. While Beeman might be able to reach back to acts constituting a hostile work environment outside the 45-day period, he must and has failed to point to a discrete act that makes up any continuing violation that he timely challenged. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (noting that so long as the plaintiff timely challenges an unlawful act, they may reach back to "component acts of the hostile work environment" that occurred outside the statute of limitations). Because Beeman has not alleged at least one act occurring within the 45-day period, Beeman's hostile work environment claim fails. See Cherosky v. Henderson, 330 F.3d 1243, 1246 (9th Cir. 2003) (noting the requirement that "at least one act [must] fall[] within the time period").

The Court therefore GRANTS in part the Motion and DISMISSES Beeman's pre-termination disparate treatment claims and the entirety of his hostile work environment claim. But the Court otherwise finds Beeman has properly exhausted his disparate treatment claim as to his termination.

**D.    Last Chance Agreement's Waiver**

Defendant also seeks dismissal of Beeman's claims on the theory that Beeman waived and relinquished them when he signed the Last Chance Agreement. The Court agrees only in part.

"A last-chance agreement is a settlement agreement, and a settlement agreement is a contract." Link v. Dep't of Treasury, 51 F.3d 1577, 1582 (Fed. Cir. 1995) (internal citations omitted). "The interpretation and validity of a release of claims under Title VII is governed by federal law." Stroman v. W. Coast Grocery Co., 884 F.2d 458, 461 (9th Cir. 1989). Under federal law, "[a] written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." Klamath Water

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S MOTION TO STAY DISCOVERY - 10

Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 1999), opinion amended on denial of reh'g, 203 F.3d 1175 (9th Cir. 2000). Terms should be given their ordinary meaning, and the intent of the parties should be ascertained from the clear terms the contract. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1549 (9th Cir. 1989). "Whenever possible, the plain language of the contract should be considered first." Klamath, 204 F.3d at 1210. Here, given the nature of the Agreement's waiver of Title VII rights, the Court "must closely scrutinize [the] waiver of rights under Title VII because of their remedial nature." Stroman, 884 F.2d at 461.

      The Court finds that the Agreement does not preclude Beeman from pursuing his disparate treatment claim arising out of his termination in December 2017. The Agreement's Title VII waiver is expressly limited to "any act that predates the effective date of this Agreement"—August 2017. (Agreement ¶ 2(h) (Dkt. No. 9-3 at 3).) Similarly, the waiver and release language in Section 2(k) is expressly limited to "any act that predates the effective date of this Agreement." (Id. ¶ 2(k).) Here, Beeman challenges acts that post-date the Agreement, and these acts fall outside the scope of the waiver. Beeman did not waive any right to challenge those post-Agreement acts. The Court rejects Defendant's argument that Beeman waived post-Agreement Title VII claims because he agreed to forego his "appeal right[s] in any forum . . . [i]n the event [Beeman] is removed for violating this Agreement." (Agreement ¶ 2(h).) This provision does not identify Beeman's Title VII rights. It speaks only to "appeal right[s]." (Id.) The Court does not construe that term "appeal right[s]" to include stand-alone Title VII claims, particularly since the same paragraph distinguishes Title VII claims from other "appeal rights." And given the prospective nature of this waiver, it would be unfair to construe this broad term expansively to sweep in any Title VII claims. Doing so would prevent Beeman from challenging

discrimination that did not occur at the time the Agreement was signed, but which arose thereafter. Construing the waiver as Defendant requests would essentially give CPB carte blanche to engage in any discriminatory conduct beyond judicial review. That interpretation would contravene Ninth Circuit authority, the remedial goals of Title VII, and common sense. See Stroman, 884 F.2d at 461. The Court therefore DENIES Defendant's Motion as to this claim, which is not subject to the Agreement's waiver.

The Court otherwise finds the Agreement bars Beeman's claims of disparate treatment and hostile work environment premised on acts that pre-date the Agreement. Beeman expressly waived those claims in signing the Agreement. (See Agreement §§ 2(h), 2(k).) The waiver is unambiguous and enforceable. So even if Beeman had exhausted those claims, he waived any right to pursue them. This is an alternative basis on which the Court GRANTS the Motion and DISMISSES those claims.

Given the Court's above analysis and determination that Beeman failed to exhaust his pre-Agreement disparate treatment and all of his hostile work environment claims, the Court does not reach Beeman's argument that the Agreement is unconscionable. Reaching that issue is not necessary to resolve the Motion to Dismiss.

**E.    Motion to Stay Discovery**

Defendant has filed a motion to stay discovery pending the Court's decision on the Motion to Dismiss. (Dkt. No. 14.) Although that motion is not yet ripe, the Court DENIES the Motion as MOOT, given the Court's Order as to the Motion to Dismiss.

**CONCLUSION**

Defendant has convinced the Court that Beeman failed to exhaust his pre-termination disparate treatment and entire hostile work environment claims. And Defendant has shown that

the Last Chance Agreement would otherwise bar Beeman from pursuing any pre-Agreement Title VII claims. The Court thus GRANTS the Motion as to those claims and DISMISSES them. But Beeman has exhausted his disparate treatment claims concerning his termination, which are not barred by the Last Chance Agreement. As to that claim, the Court DENIES the Motion to Dismiss.

And in light of the Court's Order as to the Motion to Dismiss, the Court DENIES as MOOT Defendant's Motion to Stay Discovery.

The clerk is ordered to provide copies of this order to all counsel.

Dated July 29, 2021.

Marsha J. Pechman
United States Senior District Judge